**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:   1:19-cv-3564

GOLDEN GATE PETROLEUM OF NEVADA, LLC,

      Plaintiff,

v.

FERGUSON CROSSING, LLC and TED CLARK,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Golden Gate Petroleum of Nevada, LLC ("Plaintiff" or "GGPN"), for its complaint against Defendants Ferguson Crossing, LLC and Ted Clark (collectively, "Defendants"), alleges as follows:

### JURISDICTION

1.      This action is one in which this Court has original jurisdiction in that it is a civil action in which there is complete diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).

2.      GGPN is, and was, at all times mentioned herein, a Nevada limited liability company with its principal place of business in Nevada. GGPN has a single member, an individual who is domiciled in, and a citizen of, Nevada.

3.      According to official records filed with and maintained by the Colorado Secretary of State, Defendant Ferguson Crossing, LLC ("Ferguson Crossing") is a Colorado limited liability company in good standing with its principal office street address of 3875 F 3/4 Road, Palisade, Colorado 81526.

4.      According to official records filed with and maintained by the Colorado Secretary of State, Defendant Ferguson Crossing's designated registered agent is Defendant Ted Clark.

5.      Upon information and belief, Defendant Ted Clark is Defendant Ferguson Crossing's manager as well as its sole member.

6.      Upon information and belief, Defendant Ted Clark is an individual who is a citizen of Colorado, domiciled in this state, and whose primary residence is located at 3875 F 3/4 Road, Palisade, Colorado 81526.

7.      This action is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.00.

8.      This Court has general personal jurisdiction over Defendants because they are either organized under Colorado's laws, or are natural persons residing in Colorado.

9.      This Court also has specific personal jurisdiction over Defendant Ferguson Crossing because it purposefully availed itself of the laws and protections of this forum by conducting business here, including, but not limited to, entering into contracts to be performed in Colorado that required Defendant Ferguson Crossing to convey real property situated in Colorado and to distribute funds to GGPN in Colorado for the benefit of said real property, as more fully described herein.

10.     This Court also has specific jurisdiction over Defendant Ted Clark because he availed himself of the laws and protections of this forum by conducting business here as a licensed Colorado real estate agent, and, specifically, by assisting Defendant Ferguson Crossing in entering into contracts with GGPN. Additionally, upon information and belief, Defendant Ted Clark was the recipient of a portion of the sales proceeds GGPN paid to Defendant Ferguson Crossing and/or other funds of Defendant Ferguson Crossing, which were diverted from its operating account to Defendant Ted Clark in lieu of satisfaction of Defendant Ferguson Crossing's outstanding debts.

11.     Under the circumstances, the exercise of jurisdiction over Defendants is reasonable.

## VENUE

12.     Venue is proper in the District of Colorado because the incidents complained of, or a substantial part thereof, occurred in Colorado.

## FACTUAL ALLEGATIONS

### The Real Property Sale

13.     This case arises from Defendant Ferguson Crossing's sale of real property to GGPN.

14.     In early 2018, Defendant Ferguson Crossing and GGPN entered into that certain Contract to Buy and Sell Real Estate ("Sales Contract") under which Defendant Ferguson Crossing agreed to sell, and GGPN agreed to buy, subject to certain terms and conditions, real property in Garfield County, Colorado, known as 520 River Frontage Road, Silt, Colorado 81652 ("Property").

15.     Defendant Ted Clark executed the Sales Contract on behalf of Defendant Ferguson Crossing on or about March 1, 2018.

16.     At all times relevant hereto, GGPN's dealings with Ferguson Crossing were conducted through its managing-member, Defendant Ted Clark.

17.     Under the Sales Contract, Defendant Ferguson Crossing agreed to provide proposed terms to address the cost sharing obligations set forth in that certain Easement and Cost Sharing Agreement recorded in the Garfield County Clerk and Recorder's records at Reception No. 853383 ("Cost Sharing Agreement").

18.     The Cost Sharing Agreement generally requires the Utility Cost Recovery and Access Cost Recovery (as defined therein) to be paid to adjoining property owner Camp Colorado River, LLC once any owner of the Property connects its water utilities and begins to

3

use an easement defined as the "Preferred Access," respectively.

19.     On or about March 21, 2018, Defendant Ferguson Crossing provided a proposed agreement for cost sharing to GGPN by emailing a copy to GGPN's broker, Jason Keith. The proposed agreement was entitled "Post-Closing Agreement."

20.     As drafted by counsel for Defendant Ferguson Crossing, the Post-Closing Agreement requires it to pay certain costs under the Cost Sharing Agreement if GGPN proceeded to develop the Property within a year of the effective date thereunder—though no effective date was proposed.

21.     Under the Sales Contract, GGPN had until the record title objection deadline to object to Seller's proposed terms regarding the Cost Sharing Agreement, and, if GGPN failed to so object, then it would be deemed to have accepted such terms.

22.     GGPN did not object to the Post-Closing Agreement, and, therefore, pursuant to Paragraph 30(b) of the Sales Contract, the Post-Closing Agreement was deemed accepted and itself became a material term and condition of the Sales Contract.

23.     Neither Ferguson Crossing nor GGPN proposed any revisions to the Post-Closing Agreement in advance of the closing.

24.     Paragraph 30(b) was never revised nor was it deleted from the Sales Contract prior to closing.

25.     After a number of extensions of the Sales Contract's term (for which Ferguson Crossing received additional compensation that was not credited to the purchase price), and reinstatement of the Sales Contract, the closing occurred on May 31, 2019.

26.     At or before closing, GGPN paid Ferguson Crossing the full purchase price of $1,000,000.00.

***Development of the Property***

27.     GGPN received possession of the Property after the closing.

4

109911746.3

28.     Given that development of the Property required possession thereof, the effective date of the Post-Closing Agreement, as a practical matter, could have been no earlier than the date of the closing.

29.     By extension, under the Post-Closing Agreement, GGPN has no less than a year from May 31, 2019 to commence development efforts at the Property so as to trigger Defendant Ferguson Crossing's liability thereunder.

30.     Following the closing, GGPN proceeded with development efforts at the Property.

31.     GGPN initiated the process of tapping into the Property's existing water infrastructure and began using the Preferred Access upon obtaining approval from the Colorado Department of Transportation.

32.     GGPN has thus satisfied the conditions precedent to both payment obligations under the Cost Sharing Agreement.

33.     GGPN has likewise satisfied the conditions precedent to Ferguson Crossing's payment obligations under the Post-Closing Agreement.

***Demand for Performance of Contingent Payment Obligation***

34.     GGPN made demand on Defendant Ferguson Crossing to sign the Post-Closing Agreement, but it failed and refused to do so.

35.     To date, as a condition of proceeding to develop the Property, GGPN has paid $124,521.26 to Camp Colorado River, LLC in accordance with the Cost-Sharing Agreement.

36.     GGPN has, accordingly, made demand upon Defendant Ferguson Crossing to perform pursuant to the Sales Contract and Post-Closing Agreement by reimbursing GGPN for the $124,521.26 cost-sharing payment.

37.     Defendant Ferguson Crossing has failed and refused to pay any amount to GGPN under the Sales Contract and Post-Closing Agreement.

38.     Upon information and belief, Defendant Ferguson Crossing is unable to reimburse

109911746.3

GGPN for the $124,521.26 cost-sharing payment because it lacks sufficient capital to satisfy the demand.

39.     Upon information and belief, Defendant Ferguson Crossing lacks sufficient capital to satisfy its contingent payment obligation because—after the closing, but before the one-year anniversary of the closing—Defendant Ferguson Crossing transferred some or all of the cash proceeds of the underlying sale that it received, after satisfaction of other debts listed on the sellers settlement statement, to Defendant Ted Clark.

40.     Upon information and belief, Defendant Ferguson Crossing owns no other real property or assets sufficient to satisfy its obligations under the Sales Contract and Post-Closing Agreement.

41.     Upon information and belief, Defendant Ferguson Crossing has no reasonable expectation of future income from which it could satisfy its obligations under the Sales Contract and the Post-Closing Agreement.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract—Defendant Ferguson Crossing)

42.     GGPN repeats and re-alleges all of the foregoing allegations and incorporates the same by this reference.

43.     GGPN and Defendant Ferguson Crossing are parties to the Sales Contract, which is a valid and enforceable contract.

44.     GGPN and Defendant Ferguson Crossing are parties to the Post-Closing Agreement, which is a valid and enforceable contract.

45.     In forming the Sales Contract, the parties intended to convey a valuable benefit to GGPN that induced GGPN to close on its purchase of the Property.

46.     GGPN performed all of its obligations under the Sales Contract.

109911746.3

47.     Defendant Ferguson Crossing breached its obligations under the Sales Contract and incorporated Post-Closing Agreement by failing and refusing to reimburse GGPN for certain expenses incurred in furtherance of developing the Property.

48.     As a direct and proximate cause of Defendant Ferguson Crossing's breaches of the Sales Contract and Post-Closing Agreement, GGPN has suffered monetary damages in an amount to be proven at trial.

49.     GGPN has also sustained additional compensable damages in the form of attorneys' fees to file a lawsuit to compel Defendant Ferguson Crossing's performance under the Sales Contract and Post-Closing Agreement.

## SECOND CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing—Defendant Ferguson Crossing)

50.     GGPN repeats and re-alleges all of the foregoing allegations and incorporates the same by this reference.

51.     Every contract, including the Sales Contract and Post-Closing Agreement at issue here, contains an implied covenant of good faith and fair dealing.

52.     Defendant Ferguson Crossing owed, and continues to owe, a duty of good faith and fair dealing under the Sales Contract and Post-Closing Agreement to GGPN.

53.     Defendant Ferguson Crossing breached its duty of good faith and fair dealing under the Sales Contract and Post-Closing Agreement through acts and omissions that were unfaithful to the purposes and spirit of these interrelated contracts.

54.     Defendant Ferguson Crossing breaches of its duty of good faith and fair dealing under the subject contracts include:

        a.     Failing and refusing to formally execute the accepted Post-Closing Agreement;

109911746.3

b. Failing and refusing to identify the Post-Closing Agreement's effective date as the date of, or any date after, the mutually-agreed upon closing date for the subject transaction;

c. Failing and refusing to cooperate in the payment of certain development expenses to non-party Camp Colorado River, LLC in accordance with the operative agreements;

d. Failing and refusing to reimburse GGPN for the payment it made to non-party Camp Colorado River, LLC so as to continue development efforts at the Property;

e. Denying the existence of any and all outstanding liability under either the Post-Closing Agreement or Sales Contract;

f. Knowingly depleting its assets available for satisfaction of such outstanding liabilities in advance of the one-year deadline specified in the Post-Closing Agreement and known to and agreed upon by the parties as a material term of the Sales Contract; and

g. Generally engaging in the conduct described in this Complaint.

55. As a direct and proximate result of Defendant Ferguson Crossing, LLC's breaches of the implied covenant of good faith and fair dealing, GGPN has suffered damages in an amount to be proven at trial.

56. As a direct and proximate result of Defendant Ferguson Crossing, LLC's breaches of the implied covenant of good faith and fair dealing, GGPN has incurred and continues to incur attorneys' fees and costs in the enforcement of its rights and remedies. Defendant Ferguson Crossing, LLC is liable to GGPN for such expenses in an amount to be proven at trial.

8

## THIRD CLAIM FOR RELIEF
### (Fraudulent Transfer—Defendants Ferguson Crossing & Ted Clark)

57.     GGPN repeats and re-alleges all of the foregoing allegations and incorporates the same by this reference.

58.     Pursuant to the Sales Contract and the Post-Closing Agreement, GGPN is a creditor of Defendant Ferguson Crossing.

59.     Upon information and belief, after May 31, 2019, Defendant Ferguson Crossing issued payment(s) to Ted Clark with the actual intent to hinder, delay, or defraud GGPN and/or other creditors as those terms are used in C.R.S. § 38-8-105(1)(a).

60.     Upon information and belief, Ted Clark is an "insider" of Defendant Ferguson Crossing, as that term is used in C.R.S. § 38-8-105(2)(a).

61.     Defendant Ferguson Crossing failed to disclose, and instead concealed, its post-closing transfer(s) to Ted Clark from GGPN.

62.     Upon information and belief, Defendant Ferguson Crossing's transfer(s) to Ted Clark constituted substantially all of Defendant Ferguson Crossing's assets.

63.     Upon information and belief, Defendant Ferguson Crossing's transfer(s) to Ted Clark rendered Defendant Ferguson Crossing insolvent and/or unable to pay its debts as such debts became due.

64.     Upon information and belief, Defendant Ferguson Crossing's transfer(s) to Ted Clark occurred after the parties' closing, and shortly before or shortly after Defendant Ferguson Crossing incurred a substantial debt pursuant to the Sales Contract and Post-Closing Agreement.

65.     In the alternative, and upon information and belief, Defendant Ferguson Crossing made the subject transfer(s) to Ted Clark without receiving reasonably equivalent value in exchange for the transfer(s) and while Defendant Ferguson Crossing:

109911746.3

a.      was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or

b.      intended to incur, or believed or reasonably believed that it would incur, debts beyond its ability to pay as they became due.

66.      Upon information and belief, Defendant Ferguson Crossing made the transfer(s) to Ted Clark for the express purpose of avoiding its payment obligations under the Sales Contract and Post-Closing Agreement, or, at a minimum, with willful and wonton disregard for its contingent liability thereunder.

67.      At the time of his facilitation and acceptance of the transfer(s) from Defendant Ferguson Crossing, Defendant Ted Clark knew or should have known to a degree of reasonable certainty of the extent of Defendant Ferguson Crossing's contingent liability under the Sales Contract and Post-Closing Agreement.

68.      Upon information and belief, Defendant Ted Clark acted with wrongful intent in facilitating and accepting the transfer(s) from Defendant Ferguson Crossing in advance of the one-year anniversary of the closing and before satisfaction of the Defendant Ferguson Crossing's contingent liability under the Sales Contract and Post-Closing Agreement.

69.      As a direct and proximate result of Defendant Ferguson Crossing's transfer(s) to Ted Clark, and Ted Clark's facilitation and acceptance of the same, GGPN has suffered damages in an amount to be proven at trial.

70.      GGPN is also entitled to the remedies provided for by the Colorado Fraudulent Transfer Act at C.R.S. §§ 38-8-108 and -109, including, but not limited to, a judgment for one and one-half the amount necessary to satisfy GGPN's claim, together with the its actual costs, jointly and severally against Defendant Ferguson Crossing and Ted Clark.

109911746.3

## FOURTH CLAIM FOR RELIEF
**(Unjust Enrichment—Defendants Ferguson Crossing and Ted Clark)**

71.     GGPN repeats and re-alleges all of the foregoing allegations and incorporates the same by this reference.

72.     Upon information and belief, after the Closing, Defendant Ferguson Crossing took the position that the Post-Closing Agreement was not a valid and enforceable agreement and has since refused to perform thereunder.

73.     By failing and refusing to pay the $124,521.26 cost-sharing amount demanded by GGPN, Defendant Ferguson Crossing and, in turn, Defendant Ted Clark, have received a benefit to which neither is entitled.

74.     The benefit received by Defendant Ferguson Crossing was retained at the expense of GGPN, which had a reasonable expectation of payment under the Sales Contract and Post-Closing Agreement.

75.     Under the circumstances described above, it would be unjust for Defendant Ferguson Crossing, or its principal and transferee Defendant Ted Clark, to retain the $124,521.26 that GGPN reasonably expected would be reimbursed to it in accordance with the Sales Contract and Post-Closing Agreement.

76.     GGPN is entitled to the return of the $124,521.26 in cost-sharing obligations Defendants Ferguson Crossing and Ted Clark wrongfully retained.

WHEREFORE, GGPN demands judgment against Defendants Ferguson Crossing and Ted Clark for the following:

1.     For compensatory damages in an amount to be proven at trial;

2.     For interest at the rate allowed by applicable law;

3.     For statutory damages, as provided for by applicable law;

109911746.3

4.      For costs of suit incurred in this action, including but not limited to reasonable attorneys' fees; and

5.      For such other and further relief as this Court may deem just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted:  December 16, 2019.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*s/ Darren J. Lemieux*
Darren J. Lemieux
Angela M. Vichick
1200 Seventeenth Street, Suite 3000
Denver, CO 80202-5835
Tel.:      303.623.9000
Fax:      303.623.9222
Email:    dlemieux@lrrc.com
          avichick@lrrc.com

*Attorneys for Plaintiff*

12

109911746.3